## UNIVERSAL DRAFT GEAR ATTACHMENT CO. v. BUCKEYE STEEL CASTINGS CO.

(Circuit Court of Appeals, Sixth Circuit. August 1, 1917.)

No. 2921.

1. PATENTS &roarr;328—INFRINGEMENT—CAR COUPLER.
    The Brown patent, No. 781,127, for a car coupler, *held* not infringed.
2. PATENTS &roarr;328—VALIDITY AND INVENTION—CAR COUPLER.
    The Jackson patent, No. 946,603, for a car coupler, *held* void for lack of invention in view of the prior art.

Appeal from the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Suit in equity by the Universal Draft Gear Attachment Company against the Buckeye Steel Castings Company. Decree for defendant, and complainant appeals. Affirmed.

Louis K. Gillson, of Chicago, Ill., for appellant.

A. W. Bright, of Washington, D. C., and John P. Bartlett, of New York City, for appellee.

---

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

PER CURIAM. This is a suit for infringement of two patents upon car coupling apparatus. The appellant alleged infringement of claim 3 of the Brown patent, No. 781,127, of January 31, 1905, and claim 2 of the Jackson patent, No. 946,603, of January 18, 1910. These claims are in the margin.[1] The district court found no infringement, and dismissed the bill.

[1] A car coupler is a familiar apparatus. Every structure involved in this case is simple and clear. The art is extremely crowded, and the steps taken by the patentees were, at the best, limited. The case involves no new or doubtful questions of law, but only the application of common rules. We see no object in elaborated descriptions or extensive discussion, and we think a mere statement of our conclusions will be sufficient. Claim 3 of the Brown patent calls, among others, for two distinct and independent elements. It specifies that the coupler-head and the spring-casing shall be "detachably connected," and that the bar or key which connects the casing and the draft-irons shall "also lock" this detachable connection. Here are two distinct functions, engaging two parts and locking the engagement. The connection between coupler and casing is by a bayonet joint, and when this engagement has been completed by partial rotation of the inserted member, the joint resists a blow or a pull. The only trouble is that there may be accidental turning of one in the other, whereby the effective engagement will be broken. The bar, by passing through slots in both parts, locks against inadvertent rotation. The bar cannot be the contemplated means of connection, because one of the slots is open-ended, and if it were not for the bayonet joint, the coupler and casing would pull apart. In the defendant's form, there is no detachable engagement, save as any two parts which are bolted together are detachably engaged while the bolt is in position. Neither is there any lock, save as parts capable of detachable engagement may be considered locked together while they are engaged. Defendant has a single bolt passing through those parts of the draft-irons and the coupler-head and the casing which lie in the same transverse plane. We are satisfied that this bolt cannot be considered both the detachable connection and the lock of the Brown patent. We might find the

---

[1] Claim 3 of the Brown patent: In a combined coupling and draft mechanism, the combination of a shell or casing containing the spring or tension mechanism, a coupling-head detachably connected with said shell, and a bar connecting the said shell with the draft-irons, the said bar also locking the coupling-head to said shell, substantially as described.

Claim 2 of the Jackson patent: In combination with a draft rigging having transverse follower plates, of a coupler yoke in the form of an elongated loop with parallel sides that embraces and rests on the follower plates and with transverse stops adapted to contact with the several follower plates, a pair of side wings parallel to the plane of the loop extending from the forward end of the yoke having transversely crowned inner faces, a coupler having an inner end lying between and rocking on the side walls, and a horizontal key passing through the wings and loosely engaging a slot through the inner end of the coupler.

detachable connection or we might find the lock, but we cannot find both, except in the sense that one is always the other; and the claim is not entitled to a breadth of construction reaching that situation.

[2] It is practically conceded—at least, it is clear—that claim 2 of the Jackson patent recites a combination which is identical with earlier combinations, unless for the provision that the side wings should have "transversely crowned inner faces." The coupler shank passed back between the sides of a yoke or inclosing structure. It could not be closely held therein because it must rock laterally when the train went around a curve. Accordingly, the side faces of this yoke were provided with inwardly and laterally projecting crowns or convexities which made contact with the sides of the coupler shank opposite to each other. The result was that the coupler shank would rock one way or the other, resting upon one of these points, and space was thereby provided for the forward part and the rear part of the shank to move laterally and oppositely. We see no possibility of attributing to this expedient the merit of invention. The old corresponding open-ended frames or casings had always been provided with flaring mouths to allow for this rocking by all kinds of coupler shanks, and even by the old style links. Of course, if the shank was so hung that its rear part moved laterally in the opposite direction from the lateral motion of its forward part, space must be given in which the rear part could move; and to provide this space was what Jackson did. The involved language of the claim does not raise to a higher power that ordinary degree of mechanical skill which alone is involved.

The decree below is affirmed.